# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE:<br><br>ROGER LEE KIRK,<br><br>　　　　　　Debtor.<br>PEOPLES BANK,<br>　　　　　　Plaintiff,<br>v.<br><br>ROGER LEE KIRK,<br>　　　　　　Defendant. | Case No. 1:21-bk-10458<br><br>Chapter 7<br><br><br>Adversary Pro. No. _____ |

## COMPLAINT OF PEOPLES BANK TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)

Plaintiff, Peoples Bank, by and through its undersigned counsel, Bernstein-Burkley, P.C., files this Complaint (the "Complaint") to seek a determination that the debt owed to Peoples Bank by the Debtor is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). In support of this Complaint, Peoples Bank hereby alleges upon belief that:

### PARTIES

1.　Peoples Bank (the "Bank" or "Plaintiff") is an Ohio banking corporation. Its principal place of business is located at 138 Putnam Street, Marietta, Washington County, Ohio 45750.

2.　Defendant, Roger L. Kirk ("Debtor"), is an adult individual citizen and resident of the State of Ohio whose last known address is at 67 Private Drive 274, Chesapeake, Ohio 45619.

### JURISDICTION AND VENUE

3.　The United States Bankruptcy Court for the Southern District of Ohio (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue

is proper pursuant to 28 U.S.C. § 1409. This adversary proceeding is a "core" proceeding to be heard and determined by this court pursuant to 11 U.S.C. § 157(b)(2).

4. The statutory and legal predicates for the relief sought herein is section 523(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. The Bank consents to the jurisdiction of the Court and the entry of final orders or judgment by the bankruptcy judge.

## GENERAL ALLEGATIONS

6. On March 5, 2021 (the "Petition Date"), the Debtor filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Court, commencing case no. 21-bk-10458 (the "Case").

7. June 4, 2021, was established as the deadline to object to discharge or to seek a determination of dischargeability of a debt.

8. On June 4, 2021, the Bank timely filed its Motion for Extension of Time to Object to Dischargeability of Debt and Discharge [ECF No. 14], pursuant to Bankruptcy Rules 4004(b)(1) and 4007(c) (the "Motion for Extension").

9. On June 29, 2021, the Court entered an Order [ECF No. 15] granting the Motion for Extension, in which it extended the period within which the Bank may file a complaint objecting to discharge or seeking a determination of dischargeability of a debt through and including July 2, 2021.

10. Accordingly, this Complaint is filed timely.

## **SPECIFIC FACTUAL ALLEGATIONS**

11.     On or about November 18, 2013, the Debtor executed and delivered to the Bank a Business Loan Agreement ("Loan Agreement") and a Promissory Note ("Promissory Note").

12.     A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

13.     A true and correct copy of the Promissory Note is attached hereto as **Exhibit B**.

14.     By the terms of those documents, the Bank extended to Debtor a business loan line of credit in the original principal amount of $750,000.00 (the "Loan").

15.     The purpose of the Loan was to provide a working capital line of credit for Debtor's business. *See* Loan Agreement.

16.     In the Loan Agreement, Debtor made various representations and warranties to the Bank, including:

> Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times material any indebtedness exists:
>
> . . . .
>
> **Business Activities:** Borrower maintains an office at 28511 U.S. Rt. 23, Catlettsburg, KY 41129. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

17.     In the Loan Agreement, Debtor also made promises to the Bank, including:

> Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:
>
> . . . .

**Loan Proceeds:** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

. . . .

**Performance:** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

18. At the time the line of credit was opened, it was secured by certain Northwestern Mutual Whole Life Insurance policies, including a life insurance policy owned by the Kirk Family Irrevocable Trust (the "Trust") on the life of Debtor.

19. Austin Kirk is the Trustee of the Trust and Debtor's son ("Austin Kirk" or "son").

20. Likewise, at the time of the Loan, Debtor represented to the Bank that he had assets of $2.1 million dollars and no liabilities other than a mortgage on his condominium and amounts he owed to the Bank.

21. On or around March 16, 2017, the Debtor executed and delivered to the Bank a Change in Terms Agreement ("Change in Terms"; together with the Promissory Note and Loan Agreement, the "Loan Documents").

22. A true and correct copy of the Change in Terms is attached hereto as **Exhibit C**.

23. Pursuant to that Change in Terms, the unpaid principal balance and all applicable interest and charges of the Loan became due and owing to the Bank on November 18, 2019 (the "Maturity Date").

24. The Debtor failed to pay the outstanding indebtedness by the Maturity Date.

25. The Bank received $385,508.86 from the cash value of the life insurance policy, reducing the amount owed under the Loan Documents.

26. The Debtor was notified by the Bank that he was no longer entitled to draw down on the line of credit.

**27.** Despite this knowledge, the Debtor thereafter continued drawing money from the Bank under the line of credit (the "money" or "funds").[1]

28. On information and belief, the Debtor then transferred some or all of that money to his son and/or to the Trust.

29. On information and belief, over a period of time, the Debtor also drained his personal assets and/or transferred many of his personal assets to the Trust, without receiving reasonably equivalent value in exchange for them.

30. On information and belief, Debtor transferred some or all of the funds and his assets (which in the aggregate and over time constituted substantially all of his remaining assets) to one or more insiders, without receiving reasonably equivalent value in exchange, without disclosing the transfers to the Bank at the time, and after incurring his most substantial debt— to the Bank.

31. On information and belief, Debtor's transfer of many assets to the Trust over a period of time, Debtor's continued borrowing under the line of credit despite having been told (and knowing) that he was prohibited from doing so, and his diversion of those funds to his son or the Trust (instead of using those borrowed funds in his business), were part of an orchestrated scheme to transfer assets out of the Bank's reach, to render himself judgment-proof, and/or otherwise to delay, hinder or defraud the Bank.

---

[1] The Bank put a "stop" on the line of credit, but due to an administrative error the line remained open.

32. In an effort to collect its unpaid debt, on July 10, 2020, the Bank filed a Complaint against Debtor in the Southern District of West Virginia, United States District Court at 3:20-cv-00479 for breach of the Loan Documents, seeking judgment in the amount of $206,203.03, plus interest, charges and fees (the "District Court Case").

33. As of October 11, 2020, the total amount due and owing from Debtor pursuant to the Loan was at least $242,711.56, plus fees and costs (the "Claim").

34. The Debtor commenced his chapter 7 Case in order to stay the District Court Case and to discharge the Bank's Claim.

35. In his Schedules of Assets and Liabilities [Doc. No. 1], Debtor lists only three creditors: The Internal Revenue Service (for a 2016 debt), Bank of America (for a 2008 credit card debt), and the Bank.

36. In his Schedules of Assets and Liabilities [Doc. No. 1], Debtor lists the Bank as an unsecured creditor in the amount of $206,203.03 – his single largest debt.

37. In his Schedules of Assets and Liabilities [Doc. No. 1], Debtor lists personal assets having an aggregate value of only $9,390, all of which assets he exempted in this Case.

## COUNT I
### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))

38. The Bank hereby incorporates all of the preceding paragraphs as if set forth fully herein.

39. On information and belief, Debtor's liability to the Bank is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

40. On information and belief, Debtor obtained money and services, or an extension, renewal, or refinancing of credit, from the Bank by means of false pretenses, false representations, and/or actual fraud within the meaning of 11 U.S.C. 523(a)(2)(A).

41. Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debt in which a debtor obtains money by false pretenses, false statements, or actual fraud shall not be discharged.

42. In the Loan Agreement, Debtor specifically promised to use the money he borrowed under the line of credit for his business only.

43. Despite that promise, the Bank believes and alleges that Debtor participated in a fraudulent scheme where he intentionally and impermissibly took money from the Bank under the line of credit and then transferred some or all of that money to his son or the Trust, rather than using that money in his business, and where he transferred other assets to the Trust, for his or his family's personal benefit, and in an effort to delay, hinder or defraud the Bank.

44. Even though Debtor knew that he was not authorized to borrow the money, on information and belief Debtor engaged in fraudulent conduct akin to taking the Bank's property without its permission.

45. Debtor's obligation to Plaintiff is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is nondischargeable.

46. Based on all of the foregoing averments, the Bank respectfully requests that this Court enter an Order declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), the Debtor's debt to the Bank is non-dischargeable, that a judgment for money damages is appropriate in favor of the Bank and against the Debtor, and that the Bank is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint.

## COUNT II
**(Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))**

47. The Bank hereby incorporates all of the preceding paragraphs as if set forth fully herein.

48. Debtor's liability to the Bank is a debt "for . . . embezzlement, or larceny" within the meaning of 11 U.S.C. § 523(a)(4).

49. Pursuant to Section 523(a)(4) of the Bankruptcy Code, a debt for embezzlement or larceny shall not be discharged.

50. On information and belief, Debtor misappropriated significant portions of the money under the line of credit for his own personal benefit, rather than for his business, constituting fraud and deceit.

51. Further, the Bank believes and alleges that Debtor entered into the Loan Documents with the specific intent to not use the proceeds for Debtor's business purposes and not to repay the Note and honor his obligations under the Loan Documents.

52. The funds were entrusted to Debtor and were to be repaid in accordance with the Loan Documents.

53. Once the Bank informed Debtor that he was not permitted to draw on the line of credit, all of the funds Debtor thereafter took under the line of credit were not the Debtor's to use – those funds belonged to the Bank.

54. On information and belief, by drawing funds under the line of credit after the Bank informed Debtor that he was not permitted to do so, Debtor misappropriated the Bank's funds for his personal use and deprived the Bank of those funds, thereby converting the Bank's property.

55. On information and belief, Debtor's misappropriation of the funds was embezzlement, to the extent that the Bank entrusted Debtor with those funds, because Debtor appropriated them for a purpose other than that for which they were entrusted to him – that is, on information and belief, Debtor transferred some or all of those funds to his son or the Trust, rather than using them in his business as he promised to do in the Loan Agreement.

56. On information and belief, Debtor also engaged in embezzlement because he transferred, disposed of and/or otherwise moved the funds from the line of credit with the intent to permanently deprive the Bank of that money, which was the Bank's property.

57. Alternatively, on information and belief Debtor's misappropriation of the funds was larceny, because he took the funds under the line of credit without the Bank's authorization – such that they did not come into his hands lawfully – after the Bank informed Debtor that he was no longer permitted to draw down on the line of credit.

58. Debtor's obligation to the Bank is a debt for embezzlement or larceny, and is not dischargeable.

59. Based on all of the foregoing averments, the Bank respectfully requests that this Court enter an Order declaring that, pursuant to 11 U.S.C. § 523(a)(4) the Debtor's debt to the Bank is non-dischargeable, that a judgment for money damages is appropriate in favor of the Bank and against the Debtor, and that the Bank is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint.

## COUNT III
### (Nondischargeability Under 11 U.S.C § 523(a)(6))

60. The Bank hereby incorporates all of the preceding paragraphs as if set forth fully herein.

61. Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debt for willful and malicious conduct which results in damage shall not be discharged.

62. As set forth more fully above, on information and belief the Debtor engaged in an intentional scheme which was calculated to hinder, delay or defraud the Bank.

63. On information and belief, the transfers described herein were made in an attempt to render the Debtor judgment-proof.

64. On information and belief, in view of the circumstances, Debtor either intended to harm the Bank or knew that harm to the Bank was substantially certain to occur as a result of his actions.

65. The Debtor's actions described above constitute willful and malicious conduct and resulted in economic harm to the Bank.

**66.** Based on all of the foregoing, the Bank respectfully requests that this Court enter an Order declaring that, pursuant to 11 U.S.C. § 523(a)(6), the Debtor's debt to the Bank is non-dischargeable, that a judgment for money damages is appropriate in favor of the Bank and against the Debtor, and that the Bank is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of an Order against the Debtor providing as follows:

a. that the Judgment against the Debtor is non-dischargeable in the instant bankruptcy case, in any other chapter under title 11 of the United States Code to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor, and for a money judgment in favor of the Bank in the amount of $242,711.56 plus interest and any other amounts according to proof;

b. for attorneys' fees and costs herein incurred; and

c. for such other and further relief in favor of Plaintiff as this Court may deem just and proper.

Dated: July 2, 2021                                     Respectfully submitted,

                                                                        BERNSTEIN-BURKLEY, P.C.

*/s/ Jeffrey C. Toole*
Jeffrey C. Toole, Esq.
OH ID No. 0064688
600 Superior Avenue East
Fifth Third Building, Suite 1300
Cleveland, OH 44114
Telephone: (800) 693-4013
Facsimile: (412) 456-8135
Email: jtoole@bernsteinlaw.com

*/s/Kirk B. Burkley*
Kirk B. Burkley (WVSB #11767)
kburkley@bernsteinlaw.com
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
(412) 456-8100 (T)
(412) 456-8135 (F)

*Counsel for Peoples Bank*